651 P.2d 1277

**UNITED NUCLEAR CORPORATION,**
**Plaintiff-Appellee,**

v.

**GENERAL ATOMIC COMPANY,**
**Defendant-Appellant.**

**No. 13536.**

Supreme Court of New Mexico.

Sept. 15, 1982.

Rehearing Denied Oct. 4, 1982.

Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, Montgomery & Andrews, Seth D. Montgomery, Santa Fe, Miller, Cassidy, Larroca & Lewin, Howrey & Simon, Washington, D. C., for defendant-appellant.

Bigbee, Stephenson, Carpenter, Crout & Olmsted, Harry L. Bigbee, Donnan Stephenson, Santa Fe, for plaintiff-appellee.

## OPINION

EASLEY, Chief Justice.

This complex billion-dollar dispute between United Nuclear Corporation (UNC) and General Atomic Company (GAC) has been in and out of numerous forums from coast-to-coast. An outline of the whole tangled procedural history would fill a sizeable book. We confine the recitation of facts as closely as possible to those that are material to a decision on the narrow issues raised in this, the most recent of two dozen or so times the case has been considered in our Court.

In this part of the controversy GAC appeals a decision of the Santa Fe District Court (the Santa Fe court) declaring void a California arbitration award favorable to GAC, and affirming the prior judgments favorable to UNC. The issues are:

1. Whether the decisions of the United States Supreme Court in *General Atomic Co. v. Felter*, 434 U.S. 12, 98 S.Ct. 76, 54 L.Ed.2d 199 (1977) (*Felter I*) and *General Atomic Co. v. Felter*, 436 U.S. 493, 98 S.Ct. 1939, 56 L.Ed.2d 480 (1978) (*Felter II*) prohibit the Santa Fe court from acting to void the arbitration award and affirm the prior judgments.

2. Whether the Santa Fe court had jurisdiction to void the arbitration award made in California under the Federal Arbitration Act procedures, on the grounds that the arbitration board had a duty to invoke the doctrine of *res judicata* and to give full faith and credit to our previous final decisions on all the issues raised in the arbitration hearings.

3. Whether the Federal Arbitration Act, 9 U.S.C. Sections 1–14 (1976), prevents the trial court from voiding the award.

4. Whether UNC's claim for supplemental relief is cognizable under the New Mexico Declaratory Judgment Act, Sections 44–6–1 to –15, N.M.S.A.1978.

GAC contends the Santa Fe court's decision exceeds its jurisdiction under federal law, violates the mandates in *Felter I* and *Felter II*, conflicts with the Federal Arbitration Act, and violates the declaratory judgment rules.

On the other hand, UNC claims that the trial court's decision conforms in all details with the mandates in *Felter I* and *Felter II*. UNC further urges that the arbitration award was void under the doctrine of *res judicata* since the prior final decisions of this Court, which were denied certiorari by the United States Supreme Court, held that there was no agreement to be arbitrated. These decisions hold that GAC, by its own actions, forfeited any right to arbitrate and that the dispute was so enmeshed with antitrust claims as to preclude arbitration. UNC further defends that the arbitrators exceeded their authority and manifestly disregarded the outstanding final judgments and other applicable law and, moreover, that making claim for supplemental relief under the Declaratory Judgment Act was the proper procedure.

In 1975, UNC sued GAC in a declaratory judgment action to invalidate a uranium contract (1973 Supply Agreement). The Santa Fe court granted a preliminary injunction restraining GAC from "filing or prosecuting any other action * * * in any other forum * * *," including "arbitration proceedings." We note here that the trial court *did not* restrain GAC from filing a motion in the Santa Fe court to stay the trial pending arbitration or from filing a motion to order arbitration. We affirmed the decision of the trial court. *General Atomic Co. v. Felter,* 90 N.M. 120, 560 P.2d 541 (1977), *rev'd, Felter I*. The United States Supreme Court on accepting the case on certiorari held that the injunction violated the supremacy clause in that it kept GAC from seeking relief in federal forums. *Felter I*.

GAC takes the position that every action taken by the Santa Fe court and every decision rendered in favor of UNC by this Court and the United States Supreme Court from the time the unconstitutional injunction was entered should be declared void and of no effect. The argument is that but for the erroneous restraint GAC could have sought arbitration, and that by the time the restraint was lifted, the adverse final judgments on the merits had already been issued.

However, in *Felter I* the United States Supreme Court noted that GAC had announced that it desired to defend itself by impleading UNC in federal lawsuits and federal arbitration proceedings then being pursued by utility companies, which were not parties to our case. "This, of course, is something which GAC has every right to *attempt* to do under Fed.Rule Civ.Proc. 14 and the Federal Arbitration Act." *Felter I, supra,* 434 U.S. at 18, 98 S.Ct. at 79 (emphasis added) (footnote omitted). The Court held that GAC's "right to pursue federal remedies and take advantage of federal procedures and defenses in federal actions" could not be restricted by a state court. *Felter I, supra,* at 18–19, 98 S.Ct. at 79, citing *Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964).

We consider what *Felter I* did not do, in light of the claims of GAC that the trial court's recent decision violated the mandate in *Felter I*. The United States Supreme Court did not accept GAC's argument that the Santa Fe court had no jurisdiction to proceed on the merits. In fact, the opinion says that "the case is remanded to that court for further proceedings not inconsistent with this opinion." *Felter I, supra,* 434 U.S. at 19, 98 S.Ct. at 79.

The whole impact of the opinion is that the Santa Fe court could not impede the access of GAC to federal forums. Thus, the Santa Fe court was left free to proceed to address the merits of the case, as it did. There is no other reasonable interpretation of the language in *Felter I* that supports

GAC's claim that the case precluded the Santa Fe court from making the most recent decisions.

In the meantime, the Santa Fe court proceeded with the trial of the case. Twenty-three months after the filing of the complaint and one month into the trial on the merits, GAC moved to stay the trial, alleging that it had started arbitration proceedings in San Diego. The Santa Fe court denied the motion and entered an order enjoining the San Diego arbitration, stating that enmeshed antitrust issues precluded arbitration, and that in any event, GAC had waived its right to arbitrate.

While its appeal on this decision in our Court was pending, GAC sought mandamus in the United States Supreme Court to set aside the judgment enjoining arbitration and the judgment determining that the claims were not arbitrable. The United States Supreme Court granted the petition but only insofar as it pertained to the injunction, and held that the Santa Fe court had done "precisely what we held that it lacked the power to do: interfere with attempts by GAC to assert in federal forums what it views as its entitlement to arbitration." *Felter II, supra,* 436 U.S. at 496, 98 S.Ct. at 1940 (footnote omitted). The Court stated further:

> Clearly, our prior opinion did not preclude the court from making findings concerning whether GAC had waived any right to arbitrate or whether such a right was contained in the relevant agreements. Nor did our prior decision prevent the Santa Fe court, on the basis of such findings, from declining to stay its own trial proceedings as requested by GAC pending arbitration in other forums. But, as demonstrated *supra,* we have held that the Sante Fe court is without power under the United States Constitution to interfere with efforts by GAC to obtain arbitration in federal forums on the ground that GAC is not entitled to arbitration or for any other reason whatsoever. GAC, as we previously held, has an absolute right to present its claims to federal forums.

*Felter II, supra,* at 496–97, 98 S.Ct. at 1940–41.

We note what the United States Supreme Court did not do in *Felter II.* Although GAC insisted that the Santa Fe court was without jurisdiction, that all the issues were subject to arbitration, that there was no waiver, and that the contract was valid, the United States Supreme Court did not so hold. GAC further argues that the "rationale" of the *Felter* opinions from the United States Supreme Court precludes this Court from giving any consideration to numerous final judgments on all issues, and from making any decision whatsoever regarding GAC's arbitration rights, and that the Sante Fe court violated that "rationale" by declaring the arbitration award void.

A fair reading of the two *Felter* opinions discloses that the main thrust is that the state court cannot deny GAC "access" to a federal forum. There are no comments by the United States Supreme Court bearing on the validity of the substantive rights asserted, in the event GAC gained access to a particular forum. Here the substantive rights had all been concluded with final and binding judgments before the arbitration board handed down its award.

On appeal to this Court, GAC made the same arguments it is asserting here, that the mandates of *Felter I* and *Felter II* precluded the state court from deciding that it had jurisdiction, that the claims were unarbitrable, and that there was a waiver of arbitration. This Court especially rejected these claims by GAC after analyzing in considerable detail the bodies of law from throughout the United States on each of the subject matters.

We affirmed the decision of the Santa Fe court that the court had jurisdiction to decide the question of arbitrability of the issues, that the antitrust issues were so enmeshed in the whole case that none of the questions were subject to arbitration,

and that the actions of GAC constituted a waiver of its right to arbitration. *United Nuclear Corp. v. General Atomic Co.,* 93 N.M. 105, 597 P.2d 290, *cert. denied,* 444 U.S. 911, 100 S.Ct. 222, 62 L.Ed.2d 145 (1979) (our 1979 opinion).

GAC petitioned the United States Supreme Court for certiorari, contending, among other things, that the erroneous April 2, 1976 injunction had barred GAC from demanding arbitration and that the December 27, 1977 judgment, finding that there were no arbitrable issues as a matter of law and that GAC had waived its right to arbitrate, violated the *Felter* case mandates. GAC's petition was denied. *General Atomic Co. v. United Nuclear Corp.,* 444 U.S. 911, 100 S.Ct. 222, 62 L.Ed.2d 145 (1979).

At this point the decisions on the material issues raised in the instant proceeding became "graven in stone," as UNC claims:

1. The Santa Fe court had jurisdiction.

2. Arbitration was totally out of the picture since antitrust issues are not arbitrable and were inextricably mixed with other questions.

3. GAC had forfeited its right to arbitration by failing to take steps to preserve that right.

4. The *Felter* opinions were not violated by our decisions on the above issues.

One would think the arguments on these items were set at rest. Not so. GAC found reasons to assert the same claims through numerous later proceedings. After GAC's motion for stay of proceedings was denied, the Santa Fe court entered an order imposing sanctions and a default judgment in favor of UNC against GAC, holding that GAC was guilty of "utmost bad faith" in refusing to comply with discovery orders. A later judgment held that the 1973 Supply Agreement was void and performance thereunder was excused.

On August 29, 1980, this Court affirmed in all material respects, holding that the 1973 Supply Agreement was void under the antitrust doctrine of "contract illegality," and that its enforcement would violate the public policy of this state. *United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 200, 629 P.2d 231, 276 (1980), *cert. denied,* 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981) (our 1980 opinion).

GAC sought to appeal to the United States Supreme Court both this Court's August 29, 1980 judgment and (for the second time) this Court's 1979 opinion holding the dispute nonarbitrable, again contending that all proceedings after April 2, 1976, violated the *Felter* decisions and were void. The appeal was dismissed, and certiorari was denied. *General Atomic Co. v. United Nuclear Corp.,* 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981).

GAC had made application to the American Arbitration Association (AAA) to arbitrate this dispute in San Diego. On November 30, 1977, GAC moved the Santa Fe court to stay the trial that was in progress in order to pursue arbitration. However, GAC never asked the Santa Fe court or any other court for an order compelling arbitration pursuant to Section 4 of the Federal Arbitration Act. Although AAA had announced that it would hold the arbitration demand in abeyance until final resolution on the arbitrability by an appropriate court, proceedings were commenced and UNC was directed to appoint its arbitrator. UNC filed suit in the United States District Court for the District of New Mexico to enjoin arbitration on the basis of the New Mexico judgment. The complaint was dismissed for lack of subject matter jurisdiction. *United Nuclear Corp. v. General Atomic Co.,* No. Civ. 80–845–HB (D.N.M. Dec. 11, 1980). UNC proceeded with the arbitration under protest, but withdrew its arbitrator before a final decision was reached.

In an effort to enjoin the arbitration, UNC sued GAC, the AAA, and the arbitrators in the United States District Court for the Southern District of California. That

suit was dismissed for lack of subject matter jurisdiction. Judge Enright stated that the New Mexico courts were the most appropriate forum to give effect to the New Mexico judgment, adding: "In summary, plaintiff appears to have come to the wrong court for the relief it seeks. The courts of the State of New Mexico have the primary right and duty to enforce their judgments." *United Nuclear Corp. v. General Atomic Co.,* No. 79–329–E, slip op. at 5 (S.D.Cal. July 9, 1979).

UNC appealed Judge Enright's decision to the United States Court of Appeals for the Ninth Circuit. That court denied UNC's motion for an injunction and in an order filed June 6, 1980, held that the validity of the arbitration could later be reviewed in state court, explaining:

> However, there appears to be nothing to prevent appellant from seeking injunctive relief from a state court against arbitration that has not been compelled by a federal court. *Cf. General Atomic Co. v. Felter,* 436 U.S. 493, 496–97 [98 S.Ct. 1939, 1940–41, 56 L.Ed.2d 480] (1978); *General Atomic Co. v. Felter,* 434 U.S. [12] at 18 & n. 11 [98 S.Ct. 76 at 79 & n. 11, 54 L.Ed.2d 199] (1977). Nor does it appear that appellant's contentions as to the effect of the judgments of the New Mexico state courts are insulated from eventual judicial review. *Cf.* 9 U.S.C. sections 9–11.

*United Nuclear Corp. v. General Atomic Co.,* No. 80–5229 (9th Cir. June 6, 1980) (order denying emergency motion for an injunction pending appeal).

On September 10, 1980, after this Court had affirmed the default judgment against GAC (our 1980 opinion), the two remaining members of the arbitration panel filed their Final Award holding against UNC on all material issues and granted GAC $301,181,635 in damages.

GAC sued for confirmation of the award in the United States District Court for the Southern District of California. Judge Enright dismissed GAC's suit for lack of subject matter jurisdiction. *General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 969 (9th Cir. 1981), *aff'g* No. Civ. 80–1585–E (S.D.Cal. Oct. 24, 1980), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). GAC appealed to the Ninth Circuit, which affirmed on September 8, 1981. *Id.*

UNC petitioned the Santa Fe court for supplemental relief and asked that the arbitration award be vacated. On motion by UNC this Court appointed Judge Musgrove to handle further matters in the case.

After Judge Enright's dismissal of its suit, GAC sued for confirmation of the arbitration awards in the Superior Court of the State of California, which denied UNC's motion to dismiss for lack of *in personam* jurisdiction. UNC petitioned the Court of Appeals of the State of California for a writ of mandate, and that court directed dismissal of the case. *United Nuclear Corp. v. Superior Court,* 113 Cal.App.3d 359, 169 Cal.Rptr. 827 (1980), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981). That court held the arbitration clause in the 1973 Supply Agreement could not furnish the basis for jurisdiction, since it had been held void by decisions of the New Mexico courts, which "are entitled to full faith and credit." *Id.* at 360–61, 169 Cal.Rptr. at 828.

The California Supreme Court denied GAC's motion to enjoin the pending proceedings in the Santa Fe court and denied GAC's petition for hearing as to the California Court of Appeals decision. *United Nuclear Corp. v. Superior Court,* No. 4 Civ. 24286 (Cal.Sup.Ct., Feb. 18, 1981) (order denying hearing). GAC petitioned for certiorari in the United States Supreme Court to review the California Court of Appeals decision. GAC asserted that the California court had violated the supremacy clause and failed to implement the intent of the two *Felter* cases. The Supreme Court refused to take the case. *General Atomic Co. v. United Nuclear Corp.,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981).

GAC removed the supplemental proceedings in the Santa Fe court to the United

States District Court for the District of New Mexico, which held that the removal was improper since there was no basis for federal subject matter jurisdiction, and remanded the case to the Santa Fe court. *United Nuclear Corp. v. General Atomic Co.,* No. Civ. 80–845–HB (D.N.M. Dec. 11, 1980).

After hearing UNC's petition for supplemental relief on the merits, Judge Musgrove affirmed prior decisions in this case that hold:

1. The contract containing the agreement to arbitrate was void in its entirety.

2. There are nonarbitrable antitrust issues so entwined with other issues that arbitration is precluded, even if there were a valid contract to arbitrate.

3. Assuming, *arguendo,* that there is a valid contract to arbitrate and that antitrust issues do not bar arbitration, GAC still forfeited any rights to arbitration by failing to timely assert them.

4. The above decisions, any one of which disposes of this case on the merits, do not conflict with the United States Supreme Court's rulings in the *Felter* cases.

The Santa Fe court concluded also that the arbitrators had exceeded their jurisdiction and acted in manifest disregard of the law, and thus, the award was void. GAC appeals to this Court.

### 1. Conflicts with *Felter I* and *Felter II.*

The United States Supreme Court mandates in *Felter I* and *Felter II* are narrow. They simply prohibit our state courts from specifically barring GAC's access to federal arbitration in order to assert its rights. This cannot be enlarged to mean that federal arbitration is the exclusive remedy. The express language in *Felter II* recognizes the jurisdiction of the Santa Fe court to pass on the questions of whether there is an arbitrable contract, a waiver of arbitration, or a right to a stay of trial pending arbitration. The decision on these basic issues control the disposition of this case.

Additionally, the language of the opinions cannot be interpreted to mean that a void arbitration award, which has been denied confirmation by both state and federal courts in California, must be validated by our state court even though numerous final judgments in our courts establish its invalidity.

In this latest proceeding, the Santa Fe court held that the arbitrators exceeded their authority and manifestly disregarded the law, stating:

> By some unfathomable sophistry the two arbitrators concluded that all proceedings in the New Mexico District Court and the New Mexico Supreme Court after April 2, 1976, were void or to use their words, *"coram non judice."* They reached that conclusion even though there is not the slightest hint that the United States Supreme Court intended such a result in the prior opinions. [*Felter* cases.]

Whether there was a valid contract to arbitrate and whether there were any arbitrable issues were threshold questions. There being nothing to arbitrate, there is no substance to GAC's main claim that it would have been able to seek arbitration but for the illegal injunction. The United States Supreme Court in *Felter II* stated that its prior opinion in *Felter I* "did not preclude the [Santa Fe] court from making findings concerning whether GAC had waived any right to arbitrate or whether such a right was contained in the relevant agreements." *Felter II, supra,* 436 U.S. at 497, 98 S.Ct. at 1941.

We held in our 1979 opinion that GAC had no right whatsoever to arbitration. This is a final judgment with *res judicata* effect. It cannot be collaterally attacked by a claim that the Santa Fe court's invalid order had barred federal arbitration. The lynch-pin is that there was never anything to arbitrate. The effect of GAC's argument is that all our decisions on the merits

should be "nullified" because GAC delayed asserting claims that were patently invalid from the outset. We cannot accept such convoluted reasoning. We again affirm the trial court's decision on this issue.

2. Res Judicata and Law of the Case.

If ever a court decision were etched in bronze, it would be the one holding that *Felter I* and *Felter II* did not prevent our state courts from deciding all the material issues in this case. *United Nuclear Corp. v. General Atomic Co.* (our 1979 opinion), *supra*. Like a yo-yo, this question has been propelled to and fro innumerable times between lower courts and the United States Supreme Court. Each time the result has been a rejection of GAC's claims. If the doctrines of *res judicata* and law of the case still have efficacy under our law, this issue has been adequately set at rest.

The lengthy history of the prior proceedings in this case demonstrates that each material issue before us has been answered, not once, but several times. These final judgments conclusively establish that the Santa Fe court had jurisdiction to hold that the contract was void, and thus, there was no arbitration agreement; that even if there had been a valid contract to arbitrate, GAC had voluntarily waived its rights; and that, in any event, none of the disputes were arbitrable because of enmeshed antitrust issues. Notwithstanding these prior final judgments, two arbitrators held to the contrary on each specific issue. However, GAC's efforts to get the arbitration award confirmed by California state and federal courts were rejected all the way to the United States Supreme Court. These judgments are final.

■ The doctrine of *res judicata* is firmly planted in New Mexico's jurisprudence. When there are identical parties, causes of action, subject matter, and capacity of the parties, the first judgment bars relief in a second case. *City of Santa Fe v. Velarde*, 90 N.M. 444, 564 P.2d 1326 (1977).

The doctrine applies to a declaratory judgment action. *Lamonica v. Bosenberg*, 73 N.M. 452, 389 P.2d 216 (1964); *see also Savage v. Howell*, 45 N.M. 527, 118 P.2d 1113 (1940) (declaratory judgment conclusively declares the preexisting rights of the litigants). It also applies to a judgment entered as a discovery sanction. *Chalmers v. Hughes*, 83 N.M. 314, 491 P.2d 531 (1971).

■ The doctrine of "law of the case" is applicable. *See Ute Park Summer Homes Association v. Maxwell Land Grant Co.*, 83 N.M. 558, 560, 494 P.2d 971, 973 (1972) (doctrine of law of the case long recognized in New Mexico). This doctrine holds that "[i]f an appellate court has considered and passed upon a question of law and remanded the case for further proceedings, the legal question so resolved will not be determined in a different manner on a subsequent appeal." *Id.* This doctrine controls even though the first ruling was in error. *Gerety v. Demers*, 92 N.M. 396, 589 P.2d 180 (1978).

■ The California Court of Appeals decided that the San Diego Superior Court had no jurisdictional basis upon which to confirm the arbitration award, that the New Mexico Supreme Court had held the agreement to arbitrate void, and that the latter's decisions are entitled to full faith and credit. *United Nuclear Corp. v. Superior Court, supra*. The United States Supreme Court denied certiorari. Similar treatment was given GAC's claims in the federal court system, in which they were rejected all the way to the United States Supreme Court. These judgments have *res judicata* effect as to GAC's claims. *See Napper v. Anderson, Henley, Shields, Bradford & P.*, 500 F.2d 634 (5th Cir. 1974), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *see also Chandler v. O'Bryan*, 445 F.2d 1045, 1057 (10th Cir. 1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972) (when district judge considered all questions raised on his hearing of removal of state libel suit and determined that

case should be remanded for state court trial, that decision was *res judicata* on issue of forum). This holds true in the face of somewhat conflicting language in decisions by Judge Bratton and Judge Enright regarding the authority of the arbitration board to decide the issues of *res judicata* and full faith and credit.

GAC has steadfastly maintained that only a court in the district in which the award is made has jurisdiction to confirm or vacate the award. GAC has now exhausted all possibilities for confirmation, according to its theory, and there is no further avenue open for UNC to seek to vacate the award.

The Santa Fe court further held that upon this Court's affirmance of the December 27, 1977 judgment, "[t]he issues of waiver, nonarbitrability and no inconsistency with the United States Supreme Court decisions were final, the law of the case *res judicata* and entitled to full faith and credit. * * *" We agree and affirm the decision of the trial court.

3. Jurisdiction of the Santa Fe Court to Declare the Arbitration Award Void.

GAC asserts that the Federal Arbitration Act, 9 U.S.C. Sections 1–14, controls this action to the exclusion of the laws of New Mexico and the final judgments of our courts. GAC relies upon Section 10 of the Federal Arbitration Act to support its claim:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration. * * *

9 U.S.C. Section 10 (1976).

GAC says this must be read as either a preemptive jurisdictional or venue statute; and in either case only a federal or state court "in and for the district wherein the award was made," *id.,* can vacate it. By conceding that a state court in the district where the award is made may vacate it,

GAC has weakened its claim that there must be strict compliance with the statute, which mentions only "United States" courts.

UNC claims that the section does not mention jurisdiction, venue or ousting state courts; that it does not mandate that *only* the federal court has jurisdictional or venue status to vacate an award; and thus, UNC urges that the statute does not preempt the jurisdiction or venue of state courts. UNC alleges that the section may delimit federal court jurisdiction but does not delimit state court venue or jurisdiction.

In *United Nuclear Corp. v. General Atomic Co.,* No. Civ. 80–845–HB (D.N.M. Dec. 11, 1980), Judge Bratton held that in the absence of diversity of citizenship or a federal question the federal court did not have subject matter jurisdiction of this dispute under Section 10 of the FAA. He remanded the case to the Santa Fe court. In *General Atomic Co. v. United Nuclear Corp.,* No. Civ. 80–1585–E (S.D.Cal. Oct. 24, 1980), Judge Enright ruled the same way in an action by GAC under 9 U.S.C. Section 9 to confirm the award. The United States Court of Appeals for the Ninth Circuit affirmed, stating:

> GAC argues that subject matter jurisdiction for confirmation of an arbitration award arises from the very language of section 9. We disagree, however, and feel that such an interpretation would work great mischief to the overall scheme of the Arbitration Act. In particular, that interpretation presents a significant possibility of eviscerating the clear limits on federal jurisdiction contained in sections 3 and 4. GAC's expansive interpretation would mean, for example, that a district court lacking jurisdiction to compel arbitration under section 4 might nonetheless threaten to confirm a subsequent *ex parte* award under section 9. Such a threat would have a substantial compulsory effect. We cannot approve an interpretation which would achieve by indirection that which Congress has clearly forbidden.

General Atomic Co. v. United Nuclear Corp., 655 F.2d 968, 969 (9th Cir. 1981), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982).

In *United Nuclear Corp. v. Superior Court, supra,* the California Court of Appeals ordered dismissal of GAC's confirmation application under 9 U.S.C. Section 9 for lack of jurisdiction.

UNC urges that the Act does not confer federal jurisdiction or create the basis for federal question jurisdiction under 28 U.S.C. Section 1331. Numerous federal courts have examined sections of the Act and have so held. *E.g., Commercial Metals Co. v. Balfour, Guthrie, & Co.,* 577 F.2d 264 (5th Cir. 1978); *Monte v. Southern Delaware County Authority,* 321 F.2d 870 (3d Cir. 1963); *Ballantine Books, Inc. v. Capital Distributing Co.,* 302 F.2d 17 (2d Cir. 1962); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

Subject matter jurisdiction should be determined not with respect to individual sections of the Act but with respect to the Act as a whole. *See Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 201, 76 S.Ct. 273, 275, 100 L.Ed. 199 (1965); *Robert Lawrence Co., supra.* In discussing this issue, the Court of Appeals for the Fifth Circuit stated:

> The Arbitration Act was enacted as a single comprehensive statutory scheme. To engage in the reasoning the plaintiff suggests [that Section 2 may be construed to be independent of Section 4] would in effect repeal Section 4 of the Act.

*Commercial Metals Co. v. Balfour, Guthrie & Co., supra,* at 268–269 (citations omitted).

Section 4 of the Act confines jurisdiction to compel arbitration to courts that would have jurisdiction under 28 U.S.C. Section 1331, that is, federal subject matter jurisdiction. *Bangor and Aroostock R. R. v. Maine Central R. R.,* 359 F.Supp. 261 (D.D.C.1973); C. Wright, A. Miller & E. Cooper,

Federal Practice and Procedure: Jurisdiction Section 3569 (1975). *See also Hoiness v. United States,* 335 U.S. 297, 301–02, 69 S.Ct. 70, 72, 93 L.Ed. 16 (1948); *Bainbridge v. Merchants & Miners Co.,* 287 U.S. 278, 280, 53 S.Ct. 159, 77 L.Ed. 302 (1932); *Panama R. R. v. Johnson,* 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924).

■ A congressional intent to establish exclusive jurisdiction in the federal courts is not to be lightly inferred. *Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Jurisdiction in the state court must be affirmed "where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case." *Claflin v. Houseman,* 93 U.S. 130, 136, 23 L.Ed. 833 (1876).

Considering Section 10 in light of *Hoiness v. United States, supra,* and *Bainbridge v. Merchants & Miners Co., supra,* it is apparent that Section 10 relates to venue and not to jurisdiction. Its provisions limit federal court venue but are not applicable to state courts.

The Santa Fe court concluded that the arbitrators had no jurisdiction to issue an award and that in failing to give full faith and credit to the New Mexico decisions, the arbitrators acted in manifest disregard of the law and in excess of their powers.

"Like a contract, an arbitration award that is contrary to law will not be enforced." *Johns-Manville Sales Corp. v. International Association of Machinists,* 621 F.2d 756, 758 (5th Cir. 1980) (footnote omitted). In his book entitled "The Law and Practice of Commercial Arbitration," Martin Domke concurs:

> A challenge may further be based on the alleged illegality of the award, based on the assertion that the award is against the public policy of the forum, which prevents its validity and calls for its elimination even as an unconfirmed award. Reasons for such a challenge of the award may be found, of course, in the

unenforceability of the agreement .where the arbitration clause as such cannot be validly maintained, the violation of price ceiling provisions or of the Security and Exchange Act, and usurious transaction. M. Domke, The Law and Practice of Commercial Arbitration Section 33.03, at 308 (1968) (footnote omitted).

The public policy of New Mexico demands that our trial courts enforce final judgments instead of overriding those judgments with void arbitration awards. Our public policy also precludes our courts from enforcing arbitration agreements contained in contracts that the courts find were totally void from their inception.

The award in this case was further contrary to the law and against public policy, since the arbitrators ruled on antitrust issues not subject to arbitration. *See United Nuclear Corp. v. General Atomic Co.* (our 1979 opinion), *supra.*

■ There is no question about the finality of the judgments of our courts. When the arbitrators failed to consider these judgments, which were controlling over the disposition of the issues before the arbitration board, it stands to reason that our Court must vacate the conflicting award. *See Telephone Workers Union v. New Jersey Bell Telephone Co.,* 450 F.Supp. 284 (D.N.J.1977), *aff'd* 584 F.2d 31 (3rd Cir. 1978); *Garlick Funeral Homes, Inc. v. Local 100, Service Employees International Union,* 413 F.Supp. 130 (S.D.N.Y.1976).

4. Applicability of Declaratory Judgment Act.

GAC argues that the relief granted here is not proper under the Declaratory Judgment Act, Section 44–6–9, N.M.S.A.1978. It claims that the Santa Fe court considered facts that arose after the first declaratory judgment was rendered and that since the relief was not coercive, that section does not apply. No legal authorities were cited to support these contentions.

Section 9 of the Act provides that supplemental or "further relief based on a declaratory judgment" may be granted. *Id.* Supplemental relief may be based upon subsequent facts. *See Lyle v. Luna,* 65 N.M. 429, 338 P.2d 1060 (1959).

The federal Declaratory Judgment Act is similar in all material respects to ours. At 6A J. Moore, Moore's Federal Practice Paragraph 57.10 (2d ed. 1982) it is stated:

An entirely different situation is presented where the right to coercive relief accrues *subsequent* to the filing of the complaint, and thus could not have been previously asserted. There is here no reason to bar the plaintiff from seeking coercive remedy, and if the right asserted is germane to the declaration that has been issued, redress may be had by ancillary proceedings for supplemental and further relief under the provisions of 28 USC Section 2202, which provides:

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." (footnote ·omitted) (emphasis in original).

Moore also explains that the relief need not be coercive and may be entirely declaratory. *Id.;* Restatement (Second) Judgments Section 33 comment c (1980). We conclude that the supplemental pleadings properly raised contested issues that called for declaratory relief.

■ GAC urges that no action should have been taken by the Santa Fe court prior to the issuance of a mandate in the appeal to this Court from the August 29, 1980 default ruling. However, that point was decided by us against GAC after the matter was specifically considered on September 22, 1980, on motion by UNC that a trial judge be appointed to hear any remaining issues. This Court ruled that a judge should be appointed and thereafter designated one. It is implicit in this action that this Court held that it was not necessary for a mandate to issue in the case on

644

appeal before supplemental relief could be considered. The supplemental proceedings here come within the rule permitting collateral proceedings necessary to give effect to a judgment pending appeal. Pending appeal, a trial court retains jurisdiction to enforce an unsuperseded judgment. *See* Section 44–6–9, N.M.S.A. (1978). *Prudential Insurance Co. of America v. Anaya,* 78 N.M. 101, 107, 428 P.2d 640, 646 (1967). *See* E. Borchard, Declaratory Judgments (2d ed. 1941), at 429.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, J., concur.